IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DAVID. G. FORBES, *et al.,*

        Plaintiffs,

                                    Civ. Action No.
                                    3:07-CV-0039 (TJM/DEP)

   vs.

NAMS INTERNATIONAL, INC., *et al.,*

        Defendants.
_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFFS:

BENJAMIN LAW OFFICE          RONALD R. BENJAMIN, ESQ.
P.O. Box 607
126 Riverside Drive
Binghamton, NY 13902-0607

FOR NAMS DEFENDANTS:

POPE, SCHRADER LAW FIRM      ALAN J. POPE, ESQ.
20 Hawley Street                     JAMES A. SACCO, ESQ.
Binghamton, NY 13902

FOR DEFENDANTS BANNER
 AND LEVY:

MILBER, MAKRIS LAW FIRM      SUSAN J. STROMBERG, ESQ.
1000 Woodbury Rd.
Woodbury, NY 11797

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Plaintiffs David G. Forbes, *et al.,* minority shareholders of defendant NAMS International, Inc. ("NAMS") by virtue of their ownership of non-voting common stock in the company, have commenced this action against NAMS and various of its affiliates asserting claims of fraud and misrepresentation, waste and improper diversion of corporate assets, mismanagement, and breach of contract.  Plaintiffs' complaint seeks various forms of relief including, *inter alia,* an accounting and recovery of compensatory damages, costs, and reasonable attorneys' fees.   The defendants have answered, generally denying plaintiffs' allegations and, in addition to asserting various affirmative defenses, have interposed a counterclaim alleging breach of contract.

Symptomatic perhaps of the acrimony associated with the parties' relationship and the vigor with which each side intends to press its respective claims and defenses, the parties have cross-moved at this early procedural juncture, both sides seeking sanctions under Rule 11 of the Federal Rules of Civil Procedure and, in plaintiffs' case, additionally pursuant to 28 U.S.C. § 1927.  The NAMS defendants have also moved seeking disqualification of plaintiffs' counsel of record, Ronald R. Benjamin, Esq., based upon his prior representation of the corporation in

1998.[1]

In a measure not undertaken lightly, in view of the fact that it deprives plaintiffs of representation by counsel of their choosing, but nonetheless finding it necessary to ensure the integrity of the process and to preserve client confidences presumptively imparted by NAMS to Attorney Benjamin in connection with his representation of the corporation in 1998, I am exercising my discretion by granting the NAMS defendants' motion for disqualification and, in light of that finding, conclude that there is no basis to award plaintiffs sanctions for the filing of the disqualification motion.  As to plaintiffs' motion for sanctions based upon the interposition of defendants' counterclaim, and defendants' corresponding cross-motion for sanctions, although remaining somewhat skeptical concerning defendants' ability to sustain that counterclaim, I find that the point at which its sufficiency should be weighed, for purposes of determining whether sanctions are appropriate, is following a final disposition on its merits, and accordingly deny those motions, without prejudice.

---

[1] Defendants David Banner and Mark Levy are separately represented in the case, and have made it clear that they do not join in their co-defendants' motions for disqualification and for sanctions.  Based upon that representation, during a hearing conducted on June 1, 2007 in connection with the parties' cross-motions, plaintiffs clarified that they do not seek an award of sanctions against those defendants.

I.      BACKGROUND

      A.      General Background

NAMS is a closely-held domestic corporation organized in 1994 and operated under the laws of New York, with a principal place of business located in Conklin, New York, which is within this district. NAMS is privately owned and, accordingly, its shares are not publically traded. Defendant Gregorio Loveria, III, who apparently is also known as Greg O. Loveria, is the President and Chief Executive Officer of the corporation, owning approximately seventy-five percent of its outstanding stock. NAMS is an internet-based company offering an interactive multi-media software delivery system which operates worldwide and combines audio, video and encrypted text and still image data, with uses ranging in multi-media content from marketing and support to education and entertainment information. In connection with its operations, NAMS has developed various patented software technologies in the field of multimedia entertainment.

In 2004, NAMS began actively to solicit new investors in the corporation, publishing a Confidential Private Placement Memorandum ("CPPM") announcing a private offering commencing on March 30, 2004 at a price of $1.00 per share, with a specified minimum investment of $5,000. In that CPPM, which described the offering as

"highly speculative", NAMS touted its new patent-pending technology aimed at eliminating losses suffered by members of the entertainment industry stemming from peer-to-peer sharing of copyright protected films and music files through use of the internet.  As a result of that offering, what was later extended beyond the originally-specified end date, each of the plaintiffs invested monies, in varying amounts, in NAMS and acquired a corresponding number of non-voting shares.

  B. <u>This Action</u>

  Plaintiffs commenced this action on January 10, 2007.  Dkt. No. 1. In their complaint, plaintiffs maintain that they were defrauded into investing in NAMS based upon material misrepresentations concerning its capabilities, and in reliance upon the claim that NAMS was poised to obtain patent rights to new technology in the field.  Plaintiffs also assert that Greg Loveria and others at NAMS diverted substantial corporate assets to their own personal use.  Plaintiffs' complaint sets forth claims for 1) violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240, 10b-5; 2) breach of fiduciary duty, waste, mismanagement and diversion, in violation of N.Y. Business Corporations Law § 626; 3) breach of contract also in violation of N.Y. Business Corporations Law § 626; and 4) misrepresentation and recision.

Defendants have responded to plaintiffs' claims with the filing of an answer denying the material allegations of plaintiffs' complaint, additionally asserting various affirmative defenses, and including a counterclaim for breach of contract. Defendants contend, in essence, that by bringing suit the plaintiffs have breached their duties under contracts executed by them, and seek recovery of resulting damages, including litigation costs and attorneys' fees.

  C. <u>Prior Representation</u>

Attorney Ronald J. Benjamin, Esq., plaintiffs' counsel of record in this action, is no stranger to NAMS, having represented that corporation in 1998 in connection with litigation commenced by NAMS in New York State Supreme Court against Spectra.Net Communications, Inc. and two former NAMS employees, Thomas Sickler and Jesse Wells. *See NAMS International, Inc. v. Spectra.Net Communications*, *et al.,* Index No. 1998-000321 (Broome County Sup. Ct., filed 1998). That action grew out of a contemplated merger between NAMS and Spectra.Net. During the course of discussions regarding the merger, NAMS claimed to have shared with Spectra.Net various confidential, proprietary and trade secret information concerning its technology as well as "future plans with respect to securing substantial long-term advertising revenues that would promote growth and stability for both companies." Defendants' Motion for Disqualification (Dkt.

No. 10) at Exh. A ¶ 17. Those merger discussions, unfortunately, did not ultimately prove fruitful and instead Spectra.Net continued to separately operate with the assistance of former NAMS employees Wells and Sickler, allegedly making use of NAMS' proprietary information. Attorney Benjamin's representation of NAMS in that action apparently extended beyond preparation of the complaint and filing of the action through the latter part of 1998, at which time he withdrew from that relationship. New counsel was ultimately secured in or about April, 1999 to represent NAMS in that proceeding.

II.    PROCEDURAL HISTORY

Following commencement of this suit, which occurred on January 10, 2007, and joinder of issue, plaintiffs moved on March 26, 2007 seeking sanctions under Rule 11 of the Federal Rules of Civil Procedure against the defendants for their filing of an allegedly frivolous breach of contract counterclaim. Dkt. No. 9. The NAMS defendants have since countered seeking recovery of sanctions for having to oppose plaintiffs' sanction motion. Dkt. No. 22.

Defendants also filed an application on March 26, 2007 seeking disqualification of Attorney Benjamin. Dkt. No. 10. That motion resulted in the filing on April 26, 2007 of papers by plaintiffs opposing defendants' motion and requesting the issuance of sanctions under Rule 11, and

7

additionally pursuant to 28 U.S.C. § 1927, for filing a vexatious and impermissibly motivated motion. Dkt. 19.

Briefing is now complete with regard to the pending motions, which were the subject of oral argument conducted by the court on June 1, 2007.

III. DISCUSSION

A. Attorney Disqualification

Inherent in the prerogative to "preserve the integrity of the adversary process[,]" *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979), federal courts are vested with the power to deny a litigant its choice of attorneys under appropriate circumstances. *Hemstead Video, Inc. v. Incorporated Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005). The test for determining whether a party's chosen attorney should be disqualified from representing that party in a case is by no means controversial, and is easily stated; the far greater challenge comes in attempting to apply the test to the particular circumstances of any given case. In this circuit, the nonconsensual disqualification of an attorney from representing a party adverse to a former client is appropriate when 1) the moving party is a former client; 2) there exists a substantial relationship between the subject matter of counsel's prior representation of the moving party and the issues raised in the pending case; and 3) the attorney in

8

question had, or was likely to have had, access to relevant, privileged information during the course of that prior representation. *Id.* at 133 (citing *Evans v. Artek Sys. Corp.,* 715 2d 788, 791 (2d Cir. 1983)); *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 24 (N.D.N.Y. 2002) (Sharpe, M.J.). Disqualification, which obviously limits a litigant's choice of counsel, is warranted in appropriate circumstances in order to ensure faithful adherence of the attorney's obligation to preserve client confidences even following termination of the attorney-client privilege relationship. *Miroglio v. Morgan Fabrics Corp.,* 340 F. Supp. 2d 510, 512 (S.D.N.Y. 2004) (citing *Nyquist,* 590 F.2d at 1246). As one court has observed,

> [t]he important interests that underlie the attorney-client privilege are eroded if counsel is permitted to proceed with a case knowing the protected confidences of the opposing client. . . . This, in turn, may undermine the fairness of the proceeding.

*Miroglio,* 340 F. Supp. 2d at 512.

The determination of whether to disqualify an attorney based upon prior representation of an adversary rests within the court's discretion. *Ehrich,* 210 F.R.D. at 24. It should be noted that motions seeking such relief are generally met with disfavor, particularly given that they are prone to abuse and misuse for tactical reasons. *Hickman v. Burlington Bio-Medical Corp.,* 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005); *see also Evans,*

9

715 F.2d at 791-92. Accordingly, such motions are subject to a high burden of proof, *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739-40 (2d Cir. 1978), and should be granted only when, after employing a restrained and reasoned approach, the court nonetheless concludes that continued representation by an attorney against a former client will taint the case. *Id.*; *see also Ehrich,* 210 F.R.D. at 24 (citing *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990) and *W.T. Grant Co. v. Haines,* 531 F.2d 671, 677 (2d Cir. 1976)).

In making its analysis the court should balance several competing interests, including 1) assurance that the litigation is conducted with integrity in accordance with applicable ethical standards; 2) a party's right to representation of his or her choice; 3) the repercussions of separating a lawyer and his or her clients; 4) strategic considerations; and 5) the interest of judicial economy. *Ehrich*, 210 F.R.D. at 24. Notwithstanding the disfavor with which such motions are generally met and the corresponding high burden cast upon a party seeking disqualification, because the importance of maintaining the integrity of the attorney-client privilege, any doubts must be resolved in favor of granting the motion. *Moss v. Moss Tubes, Inc.,* No. 96-CV-1407, 1998 WL 641362, at *4 (N.D.N.Y. Sept. 9, 1998) (McAvoy, J.) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)); *see also Hickman,* 371 F. Supp. 2d at 229

("The importance of preserving attorney client confidences requires that all doubts be resolved in favor of disqualification.") (citations omitted).

In this case, careful scrutiny of the available information regarding Attorney Benjamin's prior representation of NAMS and the issues in the current case suggest, at least facially, the appearance of an impropriety. Without more, however, the mere appearance of impropriety is an insufficient basis to mandate disqualification. *Hickman,* 371 F. Supp. 2d at 229.

Proceeding to application of the specifics of the governing, three-part test, at the outset I find – and no one questions this fact – that NAMS was previously represented by Attorney Benjamin. The true battleground lies in consideration of the second and third prongs of the disqualification algorythm which, at least to some degree, are substantially interrelated. The information currently available to the court suggests that despite the passage of over eight years since Attorney Benjamin withdrew from representation of NAMS, there is nonetheless a substantial interrelationship between the issues raised in the two cases and a high probability that during the course of his earlier representation of the company he had access to confidential communications enshrouded by the attorney-client privilege. In its complaint in the Spectra.Net litigation, NAMS claimed to possess sensitive and trade secret information

regarding the company's technology and business which was disclosed to and misappropriated by the defendant during the course of merger negotiations, with the assistance of former employees Wells and Sickler. In its preambulatory language, the complaint generally describes NAMS' business as well as the proprietary information allegedly misappropriated by Spectra.Net.  NAM's complaint goes on to assert that the confidential information disclosed was then utilized by Spectra.Net to solicit investments from venture capitalists.  The complaint in that action not only alleges that such information was misappropriated for use in connection with solicitation of capital investment, but additionally avers that

> [a]s negotiations proceeded, Spectra.Net not only attempted to secure the intellectual properties owned solely by NAMS and the subject of a patent application, but made an effort to secure all future inventions that Gregorio Loveria may carry out, fully recognizing his genius for producing innovative cutting-edge technology that is so necessary to compete on the ever-changing Internet.

Defendants' Motion for Disqualification (Dkt. No. 10) at Exh. A ¶ 23.

The issues raised in this case bear striking similarities to those raised in the prior Spectra.Net litigation.  At the heart of the present controversy is a claim by the plaintiffs that in soliciting investment in the company the principals of NAMS, including through statements contained within the controversial CPPM, overstated its capabilities and technology.

12

The information which was imparted, or at a minimum readily available, to Attorney Benjamin by Loveria and others at NAMS during the course of his representation of that company in its litigation against Spectra.Net is directly linked and would undoubtedly provide useful, at least as a starting point, in discerning the capabilities of the company at the time of the offering at issue in this case. Access to and potential use of such information by Attorney Benjamin against his former client under these circumstances is something that simply cannot be countenanced by the court.

This court is mindful of the fact that disqualification motions are often interjected for purely strategic reasons, including for the purpose of increasing the costs of litigation and causing delay. *Miroglio,* 340 F. Supp. 2d at 512. I have therefore granted the NAMS defendants' motion only after careful consideration, which has led me to conclude that the interest of fairness and the need to preserve the integrity of and public confidence in the judicial process overrides plaintiffs' choice of legal representation in this case.[2]

B.    Sanctions

---

[2] Despite this ruling, the court remains vigilant against the potential for misuse of such motions as an improper tactic, and would be quick to respond to such a strategy through the imposition of appropriate sanctions.

Both parties to this action have presented the court with applications seeking awards of sanctions. This disconcerting chain of events was set in motion by plaintiffs' request for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, against the defendants based upon their interposition of a breach of contract counterclaim, allegedly filed "solely for vexatious purposes." *See* Benjamin Aff. (Dkt. No. 9-3) ¶ 5. Not to be outdone, the NAMS defendants responded in kind, urging the court to award Rule 11 sanctions based upon the sanctions application filed by the plaintiffs regarding the breach of contract counterclaim. Dkt. No. 22. In response to the NAMS defendants' disqualification motion, plaintiffs later requested the imposition of sanctions under both Rule 11 and 28 U.S.C. § 1927, asserting that the disqualification motion was interposed for improper purposes. Dkt. No. 19.

Rule 11 of the Federal Rules of Civil Procedure authorizes a court, after notice and a reasonable opportunity to respond, to impose appropriate sanctions upon a party, its attorney, or both, for violating its obligations to the court as set forth in subdivision (b) of that rule. Fed. R. Civ. P. 11(c). Sanctions under Rule 11 are warranted under appropriate circumstances, including where 1) an attorney has certified groundless and frivolous papers; 2) a document has been presented for an improper purpose, such as to harass or cause unnecessary delay or expense; 3) a

claim or defense asserted is not supported by law; and/or 4) the allegations and other factual contentions made by a party lack proper evidentiary support. *See* Fed. R. Civ. P. 11(b), (c); *see also 3H Enter., Inc. v. Dwyre*, 182 F. Supp. 2d 249, 260 (N.D.N.Y. 2001) (McAvoy, J.). The imposition of sanctions is purely discretionary, and that discretion should be exercised only when improper conduct is clearly involved. *Ehrich*, 210 F.R.D. at 26. It should be noted, parenthetically, that a court may award costs, including a reasonable attorneys' fee, to a party who has successfully interposed, or resisted, a motion for Rule 11 sanctions. *Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp.,* 101 F. Supp. 2d 236, 246 (S.D.N.Y. 2000); *see also Estate of Davis v. Trojer,* 287 F. Supp. 2d 455, 456 (S.D.N.Y. 2003) (awarding costs and attorneys' fees necessitated by an adversary's filing of a meritless Rule 11 motion).

In addition to the parties' motions for sanctions under Rule 11, plaintiff has requested an award of costs and attorneys' fees under 28 U.S.C. § 1927. That section provides, in relevant part, that

> [a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Sanctions under this provision are not imposed lightly;

15

rather, imposition of section 1927 sanctions requires a clear showing of bad faith. *Gollomp v. Spitzer*, No. 06-CV-802, 2007 WL 433361, at *8 (N.D.N.Y. Feb. 5, 2007) (Scullin, S.J.); *Carrasquillo v. City of Troy*, No. 02-CV-012321, 2006 WL 304031, at *3 (N.D.N.Y. Feb. 8, 2006) (Sharpe, J.). An award under section 1927 is proper only when "'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose . . . .'" *Carrasquillo*, 2006 WL 304031, at *3 (quoting *Olivieri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). Bad faith must be established by clear evidence that the challenged actions lack any color and were taken to harass, unreasonably delay, or advance some other improper purpose. *Id.* Whether a claim is colorable requires only that a reasonable attorney could conclude that the claim *might* be established, not whether the claim actually is established. *Id.*

    Based upon my finding that the NAMS defendants' motion for disqualification was not patently meritless, and in fact is being granted, plaintiffs cannot make the necessary showing to support a motion for sanctions under either 28 U.S.C. § 1927 or Rule 11. Turning to the cross-motions for sanctions addressing defendants' counterclaims, I find that neither motion should be granted at this juncture. At this early stage in the litigation the court is not well-positioned to evaluate the merits of that

counterclaim and to find it so utterly lacking in support as to warrant the impositions of sanctions.

The court is somewhat troubled by plaintiffs' raising of the specter of sanctions at this early juncture, in response to defendants' counterclaim, apparently without first having engaged in a sufficient investigation, which according to the NAMS defendants would have disclosed that plaintiffs were mistaken in asserting that the only contracts which they signed, and which could possibly support defendants' breach of contract counterclaim, were agreements relating to restrictions on disclosing confidential information.[3]  I am nonetheless unable at this juncture to fully evaluate the propriety of plaintiffs' motion for sanctions, and will therefore deny defendants' request for an award of sanctions, also without prejudice.

IV. <u>SUMMARY AND CONCLUSION</u>

Defendants' motion for the sparingly-used exercise of the court's discretion to disqualify counsel requires the court to explore the contours of two competing concerns, one requiring that attorney-client confidences be zealously guarded and protected from disclosure even after termination of the attorney-client relationship, and the other guarantying that under most circumstances, a litigant may employ counsel of his or her choosing

---

[3] During briefing and at oral argument it became clear that defendants' counterclaim is based upon subscription agreements executed by the plaintiffs when making their investments in NAMS.

for representation in a case. Defendants' motion seeking disqualification of plaintiff's counsel lies at the intersection of these two compelling interests. Because I find the NAMS defendants have met their heavy burden of establishing that disqualification of Attorney Benjamin from representation of the plaintiffs in this action is warranted in order to preserve the integrity of attorney-client confidences shared with him during the course of his prior representation of NAMS, and resolving all doubts in favor of disqualification, I conclude that defendants' motion seeking that relief should be granted.

Turning to the various requests by the parties for sanctions, I note that this case exemplifies the ease and frequency with which Rule 11 sanctions are threatened by litigants. While violation of the duties owed to the court, including under Rule 11, is not a matter to be taken lightly, Rule 11 does not grant an unfettered license to litigants to threaten sanctions at every stage of an action. Unfortunately, this case illustrates the sad fact that antagonism between litigants and their counsel can significantly detract from the efficiency of the judicial process, and potentially erode the public's confidence in it.

Based upon the foregoing it is hereby

ORDERED as follows:

1) The NAMS defendants' motion for disqualification of Attorney

Ronald R. Benjamin, Esq. from representing the plaintiffs in this action is GRANTED. Attorney Benjamin is precluded from any further legal representation of the plaintiffs in this action except to the extent necessary to arrange for an orderly transition and conveyance of plaintiffs' legal files to new counsel. This determination is made without any finding of an ethical violation committed on the part of Attorney Benjamin in connection with this action.

     2)    Within thirty (30) days from the date of this decision the plaintiffs shall report to the court regarding the identity of their new counsel unless, prior to that date, a new attorney has filed a notice of appearance in the action.

     3)    The parties' various motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 are DENIED, without prejudice.

     4)    The court will conduct a in-person conference pursuant to Rule 16 of the Federal Rules of Civil Procedure with counsel for the parties on July 20, 2007 at 12:00 p.m. at the United States Courthouse. At least ten (10) calendar days prior to that conference the parties shall jointly file with the court a civil case management plan, in the form of that provided to them pursuant to General Order No. 25, addressing the specifics of the case and proposing a case management schedule for its progression.

5)      The clerk is directed to promptly forwards copies of this order in accordance with this court's local rules.

Dated:    June 21, 2007
          Syracuse, NY

_____
David E. Peebles
U.S. Magistrate Judge